J. O. WOLD, Jr., et al., Plaintiffs,

v.

Forrest H. ANDERSON, Governor of the State of Montana, and Frank Murray, Secretary of State of the State of Montana, Defendants.

Civ. No. 939.

United States District Court,
D. Montana.

June 11, 1971.

Towe, Neely & Ball, Thomas E. Towe, Sandall, Moses & Cavan, Russell K. Fillner, Billings, Mont. for plaintiffs.

Robert L. Woodahl, Atty. Gen., Charles C. Lovell, Chief Counsel, Lawrence D. Huss, John W. Northey, Deputy Attys. Gen., Charles H. Dickman, Asst. Atty. Gen., Helena, Mont., for defendants.

Before BROWNING, Circuit Judge, and JAMESON and SMITH, District Judges.

## OPINION AND ORDER

PER CURIAM:

By decree entered August 6, 1965, in the case of Herweg v. Thirty-ninth Legislative Assembly of the State of Montana, 246 F.Supp. 454, this Court ordered into effect a plan for the apportionment of members of the Senate and House of Representatives of the Montana Legislative Assembly for the 1966 election, retaining jurisdiction for the purpose of passing upon any plan of reapportionment enacted by the Fortieth Legislative Assembly. No appeal was taken from this decree. The Fortieth Legislative Assembly adopted the apportionment plan contained in Herweg (Ch. 194, L. 1967, R.C.M. 43–106.1 and 106.2), and members of the Montana Legislative Assembly were elected pursuant to this plan in 1968 and 1970.

A new apportionment plan was enacted by the Forty-second Legislative Assembly in Extraordinary Session (Ch. Ex–3 of the Session Laws of 1971.) This action seeks an order of this Court declaring provisions of the Act in violation of the equal protection clause of the Fourteenth Amendment to the Constitution of the United States by reason of (1) impermissible variations in the population of legislative districts, and (2) multimember districts resulting in invidious discrimination.

Chapter Ex–3 provides for 55 senators from 29 districts and 104 representatives from 28 districts. The average or ideal population per senator is 12,626. The smallest district has a population of 9,-886 or 21.7% below the average, and the largest district has a population of 14,-561 or 15.36% above the average, resulting in a deviation between the smallest and largest district of 37.06% or a variance ratio of 1 to 1.47.

The average population per representative is 6,677. The smallest district has a population of 5,541, or 13% below the average, and the largest district a population of 7,346, or 10% above the average —a deviation between the smallest and

largest district of 23% or a variance ratio of 1 to 1.35.

■ It is clear from the record that in drafting Chapter Ex-3 the Montana Legislature took the maximum deviations reflected in the Herweg decision as the acceptable standard and devised a plan within those limits which resulted in the least possible change from the status quo. But the equal protection clause of the Constitution, not Herweg, provides the standard to which the Legislature must aspire.

A court decree like that in Herweg that has as its purpose the formulation of an emergency plan to be operative only until the Legislature can act may very well be tempered with considerations of equity resulting in departures from the strict constitutional requirement of equal protection. See Burns v. Richardson, 384 U.S. 73, 85, 86 S.Ct. 1286, 16 L.Ed.2d 376 (1966); Reynolds v. Sims, 377 U.S. 533, 585–586, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964). The duty of the Legislature, however, is to make a good faith effort to comply as nearly as practical, not with the prior court decree, but with the one man one vote principle.

Moreover in Herweg the Court relied upon the tests suggested in Reynolds v. Sims, and Lucas v. Forty-fourth General Assembly of Colorado, 377 U.S. 713, 84 S.Ct. 1459, 12 L.Ed.2d 632 (1964) in determining permissible deviations, but these tests have been clarified and refined by subsequent decisions of the Supreme Court, including Swann v. Adams, 385 U.S. 440, 87 S.Ct. 569, 17 L.Ed.2d 501 (1967), Kilgarlin v. Hill, 386 U.S. 120, 87 S.Ct. 820, 17 L.Ed.2d 771 (1967), and Whitcomb v. Chavis, 403 U.S. 124, 91 S.Ct. 1858, 29 L.Ed.2d 363, and Abate v. Mundt, 403 U.S. 182, 91 S.Ct. 1904, 29 L.Ed.2d 399, decided June 7, 1971.

In Whitcomb v. Chavis the Court held that the district court had properly ordered statewide reapportionment where the deviation in senator districts ranged from 13.68% overrepresentation to 14.-52% under-representation, or a total variance of 28.20% and a ratio of 1.327 to 1, and the variance in the representative districts was 24.78% and a ratio of 1.279 to 1.

In Abate v. Mundt the Court sustained the apportionment of a county legislature which involved a maximum total deviation from population equality of 11.9%. However, the Court stated that "slightly greater percentage deviations may be tolerable for local government apportionment schemes" than for "state and national counterparts". The Court went on to "emphasize that our decision is based on the long tradition of overlapping function and dual personnel in Rockland County government and on the fact that the plan before us does not contain a built-in bias tending to favor particular political interests or geographic areas."

■ It is apparent from these cases that the defendants have failed to sustain their burden of showing that differences of the magnitude of Chapter Ex-3 are necessary or grounded on acceptable state policy. It is the opinion of the Court that neither a desire to maintain a given number of seats in the legislative bodies nor a desire to respect county lines [1] will justify the imbalance created by Chapter Ex-3, Session Laws of 1971 and we declare it to be unconstitutional.

■ It is clear also from Whitcomb v. Chavis that multimember districts are "not inherently invidious and violative of the Fourteenth Amendment." Plaintiffs have failed to sustain their burden of proving that the provision for multimember districts is unconstitutional.

■ We act on the premise as we did in Herweg that reapportionment is the proper function of the Legislative Assembly. This is so not only because of

---

1. In Whitcomb v. Chavis the Supreme Court sustained a lower court decree which divided some counties into several districts. The lower court had concluded that "difficulty of devising * * compact and contiguous * * * districts within that framework (of mathematical equality) has in large part precluded preservation of county lines." (See note 42)

the political factors involved which traditionally belong to the legislative branch, but also because the legislature has capacities for action not enjoyed by the court. Thus, if the political consequences of a reapportionment according to county lines are thought to be undesirable, the Legislature can disregard those lines and devise the electoral machinery necessary to secure an orderly election. The Court not having such power to create electoral machinery would be most hesitant to fracture county lines and might be forced to accept what a legislature would deem to be unfortunate political consequences.

We take judicial notice of the fact that the Montana Legislative Assembly is now in extraordinary session. We reserve jurisdiction to make such orders as may be appropriate following such session.